Opinion filed April 16, 2009











 
 
  
 
 







 
 
  
 
 




Opinion filed April 16,
2009

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh
Court of Appeals

                                                                  ___________

 

                                                          No. 11-07-00311-CR

                                                    __________

 

                              BRADLEY TERRILL GIVENS, Appellant

 

                                                             V.

 

                                         STATE
OF TEXAS, Appellee

 



 

                                         On
Appeal from the 358th District Court

 

                                                           Ector
County, Texas

 

                                                 Trial
Court Cause No. D-33,786

 



 

                                             M
E M O R A N D U M   O P I N I O N

The
jury convicted Bradley Terrill Givens of aggravated sexual assault and unlawful
restraint.  The jury assessed his punishment for the aggravated sexual assault
offense at confinement for fourteen years.  The trial court assessed his
punishment for the unlawful restraint offense at confinement in the county jail
for one year.  We affirm.

                                                                 Issues
on Appeal








Appellant
only challenges his aggravated sexual assault conviction.  In four issues,
appellant contends that the evidence is both legally and factually
insufficient. Specifically, appellant argues that  he never admitted to having
sexual relations with the victim, that there was no medical evidence that the
victim had been sexually assaulted, that there was no evidence that he used a
weapon or made any verbal threat to kill the victim, and that the medical
evidence established that the victim did not suffer from any serious bodily
injuries.

                                        Allegations
and Applicable Statutory Provisions

The
indictment alleged that appellant intentionally or knowingly penetrated the
victim=s female sexual
organ without her consent with his male sexual organ and that he compelled the
victim=s submission by
use of physical force and violence upon the victim.  Tex. Penal Code Ann. '
22.021(Vernon Supp. 2008) provides that the offense of sexual assault is
aggravated if a person, Aby
acts or words,@ places
the victim in fear of death, serious bodily injury, or kidnapping. 

                                                              Standards
of Review

In
order to determine if the evidence is legally sufficient, the appellate court
reviews all of the evidence in the light most favorable to the verdict and
determines whether any rational trier of fact could have found the essential
elements of the crime beyond a reasonable doubt.  Jackson v. Virginia,
443 U.S. 307, 319 (1979); Jackson v. State, 17 S.W.3d 664, 667 (Tex.
Crim. App. 2000). 

To determine if
the evidence is factually sufficient, the appellate court reviews all of the
evidence in a neutral light.  Watson v. State, 204 S.W.3d 404, 414 (Tex.
Crim. App. 2006) (overruling in part Zuniga v. State, 144 S.W.3d 477
(Tex. Crim. App. 2004)); Johnson v. State, 23 S.W.3d 1, 10-11 (Tex.
Crim. App. 2000); Cain v. State, 958 S.W.2d 404, 407-08 (Tex. Crim. App.
1997); Clewis v. State, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996). 
Then, the reviewing court determines whether the evidence supporting the
verdict is so weak that the verdict is clearly wrong and manifestly unjust or
whether the verdict is against the great weight and preponderance of the
conflicting evidence.  Watson, 204 S.W.3d at 414-15; Johnson, 23
S.W.3d at 10-11.








The
appellate court reviews the factfinder=s
weighing of the evidence and cannot substitute its judgment for that of the
factfinder.  Cain, 958 S.W.2d at 407; Clewis, 922 S.W.2d at 133. 
Due deference must be given to the factfinder=s
determination, particularly concerning the weight and credibility of the
evidence.  Johnson, 23 S.W.3d 1; Jones v. State, 944 S.W.2d 642
(Tex. Crim. App. 1996).  The jury, as the finder of fact, is the sole judge of
the weight and credibility of the witnesses=
testimony.  Tex. Code Crim.
Proc. Ann. art. 36.13 (Vernon 2007), art. 38.04 (Vernon 1979).  This
court has the authority to disagree with the factfinder=s determination Aonly
when the record clearly indicates such a step is necessary to arrest the
occurrence of a manifest injustice.@ 
Johnson, 23 S.W.3d at 9.

                                                                Evidence
at Trial

It
was undisputed at trial that appellant and the victim had lived together and
had a child together.  It was also undisputed that they had a stormy
relationship and fought often. 

The
victim testified that she had dated appellant on and off for about two years
and that appellant was the father of her youngest child.  She stated that she
had ended the relationship in February 2006 because she wanted out of the
abusive relationship.  She had moved out  unannounced.  In August, she moved to
a new apartment and did not tell appellant where she was living.  While
appellant continued to see their child, the victim did not let appellant come
to where she was living.  Most of the time, they would meet at the victim=s mother=s home. 

The
victim testified that on October 30, 2006, she had been doing laundry at her
mother=s home.  She
had just returned home when appellant came over between 10:45 and 11:00 p.m.  
While they had been getting along at this time, appellant did not live with her
and kept no clothes at her apartment.  Their child was almost one year old, and
they had been talking about celebrating her birthday. 

Appellant
came into the apartment and played with their baby.  He asked the victim if he
could put the baby to sleep.  The victim testified that she told him he could
but that he would have to leave after he did. 

Appellant
did not leave and followed the victim upstairs.  The victim stated that
appellant became angry and asked her why she was hurting their family.  He
began to hit her and to accuse her of having sex with other men when she would
not have sex with him.  He hit her on her back and on her head with his closed
fist.  She tried to get up, but he pulled her down to the ground.  He had his
hands over her nose and mouth, and she began to see black spots.  The victim
stated that she thought she was going to die.  She described how appellant
knocked the breath out of her twice and how she kicked the wall to get him off
her.  








She
was Acompletely
exhausted.@  Her lips
were bleeding, and her ear was blue.   Appellant told her that she was going to
look Anice@ for their daughter=s birthday party.  Every
time she tried to get up, appellant pushed her back down.  Her ear was
throbbing, and she could feel that it was swollen.  Appellant held her arm down
as he had sexual intercourse with her.  The victim testified that she was too
exhausted to fight appellant, that she was not a willing participant, and that
appellant knew she was not participating willingly.  She was crying Athe whole time.@  

Around
3:30 a.m., their baby woke up.  The victim told appellant that the baby was
teething and wanted her bottle.  Appellant gave the baby her bottle.  He would
not let the victim touch the baby and placed the baby on the victim=s bed.  If the victim said
something that appellant did not like, he hit her.  Neither appellant nor the
victim went to sleep. 

Later
in the morning, appellant told her to call in sick for work.  After she did, he
began to apologize.  Her cell phone rang several times.  When she checked her
phone, she had voice mails from work because she had a set of keys that her
coworkers needed.  She told appellant that she had to drop the keys at work. 
Appellant let her go but would not let her take their baby with her. 

The
victim testified that she went to her work and dropped off the keys.  One of
her coworkers saw her and could tell that Asomething
was wrong.@  When he
asked her what was wrong, the victim told him that appellant had beaten and
raped her and that she was going to call the police from her mother=s house.  

The
victim called the police from her mother=s
house and, together with a friend, went back to her apartment.  Her friend went
in with the police, and her mother took the baby to day care while the victim
went to the hospital. 

The
victim repeatedly testified that appellant had not been living with her at the
time and that she did not know how he knew where she was living.  She stated
that she had not lent appellant her car that night and that she had not called
him. 

Erica
Powell testified that she was good friends with the victim.  Powell stated that
no one was living at the apartment with the victim other than her children and
that appellant did not live with the victim at the time.  








Christin
Abbott testified that she was the sexual assault nurse examiner who interviewed
and examined the victim.  The victim had tenderness to her scalp and bruising
to her left ear, left eye, left foot, and left side of her back from her
shoulder blade down to the area where the kidney was located.  She had a Areal tender knot@ near her belly button and
bite marks on her right shoulder, left back, and lower right back.  Abbott
found no vaginal trauma but testified that this lack of vaginal trauma was not
unusual for a twenty-seven to twenty-eight-year-old woman who had had two
children, was sexually active, and had been sexually assaulted.  Because of the
amount of tenderness the victim was experiencing, Abbott sent the victim to see
a physician. 

Marta
Willoughby, M.D. testified that she was the emergency medical physician on
duty.  The nurse called her into a consultation on the victim because the
victim=s urine
appeared bloody and because she had flank bruising that could have been Apotential kidney trauma.@  Dr. Willoughby observed
what could be an Aindication
of a life threatening injury@
and ordered a cat scan of the victim=s
abdomen and pelvis as well as a urinalysis.   

The
cat scan revealed that appellant had bleeding within her abdominal wall muscle. 
While the bleeding was not in her internal organs, the bleeding was not in the
superficial tissue.  Dr. Willoughby could not testify as to the time frame
for the abdominal injury but did testify that, when she examined the victim,
she observed Aactive
blood.@  

Dr.
Willoughby also testified that the victim had a kidney stone.  The position of
the stone was Anonobstructing@ and would have not
normally caused the pain the victim was feeling up and down her back.  Dr.
Willoughby also stated that bruising behind the ear caused by a fist could
cause Avery serious
injuries@ and that the
knot in the victim=s
abdomen was not a hernia. 

Law
enforcement officers who responded to the victim=s
call testified that she was visibly upset and had injuries to her head, her
left ear, and her lip.  The victim was hysterical and could not give the
officers Aany real
detailed information.@ 
The officers entered the apartment and found appellant and the couple=s baby.  No furniture was
overturned, and there was no evidence of a fight.  They arrested appellant on
an outstanding arrest warrant for simple assault.   

At
the hospital, the victim was still scared despite the fact that an armed police
officer was present.  The officers observed that the victim=s lip was bleeding and that
she had bite marks on her back.  Semen was found as a result of the sexual
assault examination.  However, because appellant admitted to one of the
officers that sexual intercourse had occurred between them, no DNA testing was
done.  








Paul
ATrey@ D. Adams III testified
that he worked with the victim.  He described how the victim came into work
wearing sunglasses and clothes that she did not normally wear to work.  Her
face was swollen, and she did not look like herself.  She also had blood on her
mouth.  She walked past him before he recognized her.  He followed her into the
office that they shared and offered to call the police for her. 

Appellant
did not testify.  Annie M. Norice testified that she was appellant=s mother and that she knew
the victim because the victim was Athe
female of [her] son.@ 
Norice stated that at the time in question appellant was living with the victim
and their child at the victim=s
apartment.   Norice also testified that, after appellant=s arrest, the victim talked to her about going
to the district attorney=s
office to call off the prosecution for the offense.  

Norice
explained that she did not recall the details of the assault complaint she had
filed against appellant.  In her assault complaint, she reported that appellant
had assaulted her with a coffee creamer bottle and had tried to run over her
with his car. 

Keith
Givens testified that he was appellant=s
brother.  On the night in question, the victim had let appellant use her car. 
Keith met appellant at the Zodiac nightclub, but appellant had driven the
victim=s car there. 

Keith
stated that appellant got a number of calls on his cell phone. As a result,
they left and went to the victim=s
apartment.  The two men watched Sunday Night Football, and Keith passed out. 
When he woke up, appellant offered to let Keith spend the night.  Keith refused
and called for someone to pick him up. 

Keith
testified that he had Ano
idea@ what teams were
playing that night.  He stated that, while appellant and the victim often
fought, they Anever
[were] really separated.@ 
When they fought, appellant would stay with his mother for Aa week or two.@ 

Percy
Moore, appellant=s
aunt, testified that appellant and the victim were living together at the
time.  Stacy L. Moore, appellant=s
cousin, also stated that appellant and the victim were Atogether@
at the time in question.  

                                                                        Analysis








When
all the evidence is viewed in the light most favorable to the verdict, we find
that the evidence is sufficient to support the factfinder=s determination that
appellant committed the offense of aggravated sexual assault.  The victim
testified that she did not consent to sexual intercourse with appellant.  She
described how appellant hit her with his fists, pushed her down, and covered
her nose and mouth.  She also described the injuries that resulted from his
actions.  The nurse who performed the sexual assault exam testified that the
evidence she found matched the history of the assault that the victim had given
her.  Odessa Police Detective Brad Timmons testified that DNA testing was not
done because it would have only confirmed what both the victim and appellant
had told him B  that
sexual intercourse had occurred between them.  The jury could have reasonably
concluded, as alleged in the indictment, that appellant compelled the victim=s submission by the use of
physical force and violence.   Not only  the victim=s testimony but also the testimony of the
nurse, the doctor, and the police officers support the jury=s determination that
appellant by his words and actions placed the victim in fear of serious bodily
injury or  in fear for her life as required by Section 22.021.  The evidence is
legally sufficient.

Likewise,
when the evidence is reviewed in a neutral light, we find that the evidence
supporting the verdict is not so weak that the verdict is clearly wrong and
manifestly unjust and that   the verdict is not against the great weight and
preponderance of the conflicting evidence.  The jury, as the sole finder of
fact, was free to believe all or none of the testimony that appellant and the
victim were still living together as a couple at the time in question.  Section
22.021 does not require that appellant must have actually inflicted serious
bodily injury to the victim, must have used a weapon, or must have threatened
to kill the victim before he could be convicted of aggravated sexual assault. 
There is factually sufficient evidence to support the jury=s verdict that appellant
placed the victim in fear of serious bodily injury or in fear for her life. 
Likewise, the evidence is factually sufficient to support the jury=s determination that
intercourse occurred between appellant and the victim without the victim=s consent.  All of
appellant=s issues are
overruled.

                                                            Holding

The
judgments of the trial court are affirmed.

 

PER CURIAM

April 16, 2009

Do not publish. 
See Tex. R. App. P. 47.2(b).

Panel consists of:  Wright, C.J.,

McCall, J., and Strange, J.